# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **DIAHNA CARROLL O/B/O ANTAZJA QUINN,** | ) ) ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | **CIVIL ACTION** |
| **v.** | ) | |
|  | ) | **No. 03-2392-CM** |
|  | ) | |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | ) ) ) | |
|  | ) | |
| **Defendant.** | ) | |
|  | ) | |

## MEMORANDUM AND ORDER

This is a proceeding under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff filed an application for child's supplemental security income (SSI) benefits based on disability under Title XVI. The application was denied initially and on reconsideration. On March 12, 2003, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that plaintiff was not under a "disability" as defined in the Social Security Act. On July 18, 2003, after reviewing updated evidence submitted by plaintiff, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## I.      Background Facts

Plaintiff, a child born May 16, 2000, was alleged to be disabled since May 16, 2000, due to a right arm injury which occurred at birth. Testifying at the hearing on plaintiff's behalf was her maternal grandmother, Diahna Carroll. Ms. Carroll testified that plaintiff had lived with her since her birth and that she was thoroughly knowledgeable about plaintiff's medical history since birth. Ms. Carroll testified that she watched the doctor deliver plaintiff and that the doctor immediately noticed a problem with plaintiff's right arm. The doctors discovered a brachial plexus injury to the right arm.

When plaintiff was seven months old, she was flown to Houston, Texas, for a rare brachial plexus surgery that consisted of a nerve transplant in which nerves from her leg were grafted into her upper extremity. According to Ms. Carroll's testimony, plaintiff had only limited improvement as a result of this surgery and that plaintiff was scheduled to have another surgery in January of 2003 (which she subsequently had).

## II.     Standard

The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Although

the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). Nor will the findings be affirmed by isolating facts and labeling them as substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis. *Id.* The court thus reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).

## III.   Regulatory Framework

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the 1996 Act), which amended the statutory definition of disability for children seeking SSI. To be disabled, an individual not yet eighteen must suffer from a medically determinable physical or mental impairment (or a combination of such impairments) which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

The final rules follow a three-step sequential evaluation, under which the ALJ will consider 1) whether the child is working; 2) whether the child has a medically determinable "severe"

impairment or combination of impairments; and 3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924 (2003).

Under the final regulations, at the third step of the evaluation, adjudicators will evaluate a child's functional limitations in the following six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for herself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a.

A "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme," or "equivalent to standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is the rating given to the worst limitations, although it does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i).

A child will be found to be disabled if he or she has an impairment which meets the severity criteria for an impairment listed in the "Listing of Impairments" in 20 C.F.R. Part 404, or if the impairment is functionally equal in severity to a listed impairment. As stated above, a child's impairment will be considered the functional equivalent of a listed impairment if the child has a "marked" limitation in at least two functional domains or an "extreme" limitation in one functional domain.

-4-

**IV.     The ALJ's Decision**

In the first two steps of the process, the ALJ determined plaintiff was not working, and that she had a severe impairment, namely right upper extremity global brachial plexopathy. The ALJ then proceeded to evaluate the six relevant functional domains, determining whether plaintiff had no limitation, less than marked limitation, marked limitation, or extreme limitation in each domain. The ALJ found that plaintiff's loss of the use of her right arm did not cause her to be disabled under child disability rules.[1]   The court now turns to the record to determine whether the ALJ's decision was supported by substantial evidence.

The court first considers the three domains relating to mental, social, and psychological factors, which are acquiring and using information, attending and completing tasks, and interacting and relating with others. The ALJ found either no limitation or less than marked limitation in these three areas.  In so finding, the ALJ noted that plaintiff's grandmother referred to plaintiff as "bright," and that Magen Denning, OTR, an occupational therapist who worked with plaintiff, noted that plaintiff was unlimited in cognitive/communicative function. Therefore, the ALJ found plaintiff did not suffer from any restriction in her ability to acquire and use information.  Plaintiff's grandmother and Ms. Denning did not believe plaintiff was restricted in attending and completing tasks.  As such, the ALJ found that plaintiff suffered from a less-than-marked restriction in this domain.  The ALJ

---

[1]It is noteworthy that, in the adult context, Administration rulings state that loss of use of one arm is not necessarily disabling.

noted that plaintiff was socially unrestricted, citing plaintiff's normal activities such as helping clean up, playing with cousins, visiting her father, playing with dolls, and other normal activities for her age group. Treating physician Stephen P. Schaum, M.D., observed that plaintiff was a "good talker and is socially normal." Plaintiff's grandmother agreed, noting that plaintiff's social development was adequate. Therefore, the ALJ properly found that plaintiff was unlimited in her ability to interact and relate with others.

The court next turns to the ALJ's evaluation of the three remaining domains: moving about and manipulating objects, caring for yourself, and health and physical well-being. The ALJ accepted that plaintiff had little function in her right arm. In the domain of moving about and manipulating objects, the ALJ considered the extent to which plaintiff could move her body from one place to another, and how well she could move and manipulate objects. Ms. Denning noted that plaintiff had a "moderate" degree of limitation in the area of motor function. Moreover, in a September 2002 Wyandotte County Infant-Toddler Services form noted that plaintiff's gross motor skills were within normal limits, were age-appropriate, and "were not a concern" as of September 2002. At age 28 months, plaintiff's fine motor skills were roughly age-appropriate as well, as plaintiff performed in the 24-27 month range, and "scatter[ed] up into the 30-month range," which was "within normal limits." Ms. Denning assessed that plaintiff's motor functioning was age-appropriate. Thus, despite the loss of use of her arm, the record supports the ALJ's finding of a less-than-marked restriction in the domain of moving and manipulating objects.

In the fifth of the functional domains, the ALJ found that plaintiff's ability to care for herself, which includes feeding, dressing, and other self-care activities, suffered a "marked" restriction due

to the loss of use of her hand. Occupational therapist Ms. Denning believed plaintiff suffered a

"moderate" restriction in this area, but Terrell Ellene Mann, an early childhood special educator,

noted that plaintiff suffered a "marked" restriction in the area. Ms. Denning's report noted that

plaintiff needed help dressing, and that she still had accidents despite being potty trained, but also

pointed out that plaintiff had become "very adaptable" in eating skills, and that she was using age-

appropriate cups and utensils. Therefore, the ALJ's determination that plaintiff suffered in this

domain from marked limitation, rather than an extreme limitation, is supported by the record.

Finally, the ALJ found that plaintiff had a less-than-marked restriction in her general

health and well-being, a category to cover children who are frequently ill or suffer exacerbations

in their illnesses. *See generally*, 20 C.F.R. § 416.926a(l-m). A child is considered to have a

marked impairment in this domain if the child has exacerbations three or more times per year,

and which last for two weeks or more. 20 C.F.R. § 416.926a(d)(iv). While plaintiff had surgery

on her arm and required therapy, plaintiff was developing relatively normal in nearly all respects.

There is nothing in the record to suggest that plaintiff suffered any physical symptoms except those

caused by her arm; she took no medications causing serious side effects nor was plaintiff required

to report to the hospital for chemotherapy or other long-term treatment. Two surgeries prior to

plaintiff's third birthday is not sufficiently frequent or disruptive to qualify under this listing. The ALJ

properly found that this domain was less than marked.

Accordingly, finding a marked limitation in only one domain, the ALJ determined that

plaintiff is not disabled.

Plaintiff argues that the ALJ should have interpreted a letter from plaintiff's treating physician, Robert Rinaldi, M.D., as suggesting that her impairments rise to the level of functional equivalence under the listing of impairments. In the letter, dated February 2, 2001, Dr. Rinaldi wrote that he disagreed with the Administration's determination that plaintiff's condition did not result in "marked and severe functional limitations." After discussing plaintiff's treatment and long-term prognosis, the doctor added that children like plaintiff had difficulty raising their arm, participating in self-care and dressing skills, difficulty with protective responses in the effected extremity, offset balance, showed poor coordination, and suffered limitation in range of motion.

A treating physician's opinion is entitled to great weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater,* 923 F. Supp. 1373, 1379 (D. Kan. 1996). The ALJ in this case properly cited to and considered Dr. Rinaldi's letter. However, in the end, the issue of equivalence under the six domains is ultimately reserved for the Commissioner to decide, and Dr. Rinaldi's letter provided little in the way of evidence that could be directly related to the six domains the ALJ carefully considered.

Plaintiff had a fair hearing and full administrative consideration in accordance with the applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision that plaintiff did not prove she was disabled as defined by the Act at any time on or before the date of the ALJ's decision. Accordingly, the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.

Dated this __22__ day of March 2005, at Kansas City, Kansas.


<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**